### 35187. HINES *v.* PAIR.

DECIDED SEPTEMBER 24, 1954.

*Carter, Latimer & Savell, Edward L. Savell,* for plaintiff in error.

*Harris Bullock, Wilson Brooks,* contra.

QUILLIAN, J. Mrs. Mary Alice Pair sued Lee Roy Hines for damages for the death of her husband, alleged to have resulted from the negligence of the defendant in striking him and inflicting certain injuries on him on October 9, 1952, with his automobile, from which injuries her husband died on November 30, 1952. The defendant answered, denying the material allegations of the petition respecting his negligence, and setting up the contributory negligence of the deceased as the proximate cause of his injuries and death. On the trial the jury returned a verdict in favor of the plaintiff for $7,750, the defendant made a motion for new trial on the general grounds and 3 special grounds, which was overruled, and the exception here is to that order.

The petition charged the defendant with negligence in the following particulars: in operating his automobile in excess of 35 miles per hour, the legal maximum speed fixed by a valid ordinance of the City of Atlanta at the place of the collision; in operating his automobile without having it under his immediate control, in violation of Georgia law, specifically Code § 68-304; in failing to maintain a proper lookout ahead, and in failing to anticipate the presence of the plaintiff's husband and avoid striking him; in operating the automobile at a speed greater than was reasonable and safe, in violation of Code (Ann. Supp.) § 68-301; in failing to reduce speed in passing through a congested area and an intersection; and in failing to yield the right of way to the plaintiff's husband in violation of the following valid and subsisting ordinance of the City of Atlanta: "Section 88-1002—(a) When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a cross-walk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle, which is so close that it is impossible for the driver to yield. A pedestrian's right-of-way in a cross-walk is modified under the condition and as stated in Section 88-1005"; and in violation of the following valid and subsisting ordinance of the City of Atlanta: "Section

88-1005—(a) Every pedestrian crossing a roadway at any point other than within a marked cross-walk or within an unmarked cross-walk at an intersection shall yield the right-of-way to all vehicles upon the roadway"; and in that the defendant did not exercise due care to avoid striking the petitioner's husband, and did not sound his horn in violation of the following valid and subsisting ordinance of the City of Atlanta: "Section 88-1008—(a) Notwithstanding the foregoing provisions of this article, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway"; which violations of said ordinances are alleged to have been negligence per se.

1. The plaintiff herself was not an eyewitness to the collision between the defendant's automobile and her husband, and did not personally investigate such collision. Only one person other than the defendant testified as an eyewitness, and his testimony respecting the happening of the collision and the negligence of the defendant will be outlined below. This single eyewitness was one Preston Kemp, who the evidence showed was a brother-in-law of the plaintiff, and who had had some difficulty in the past with the plaintiff and her husband, the deceased.

Lamar F. Harris, a police officer of the City of Atlanta who investigated the incident, testified: "We found when we arrived at that intersection that this car, which was going east on Gordon, had struck this pedestrian. . . We determined the driver of the automobile as Lee Roy Hines. The only thing we could determine about where the point of contact was between the pedestrian and the automobile was the damage to the car and the position of the body. I did not see any dirt or debris on the street from the automobile driven by Mr. Hines. Mr. Pair's body was approximately eight to ten feet—we just stepped it off—from the east limit of an imaginary cross-walk. There are no cross-walks marked there, but he was laying about eight or ten feet east of what would have been the cross-walk. It was near the intersection of Willis Mill and Gordon Road. He was lying eight feet east of the imaginary cross-walk at that intersection—it was three steps. That was the direction in which the

automobile was being operated. It was the east side of Willis Mill Road. Gordon Road runs east and west, and it was on the east side of Willis Mill. . . I did not see the collision. . . I talked to Mr. Lee Roy Hines there, asking if he was the driver, and he stated that he was; but he was suffering from shock, and we talked to him more about it at Grady Hospital. Mr. Hines stated that he did not see Mr. Pair until he walked out in front of the car and he hit him. I would be afraid to say whether the automobile was behind the body or before it when I arrived on the scene.

"Mr. Hines' automobile was bent on the top right near the windshield, and the grille was damaged right in front of the car. Mr. Hines stated that he did not see him until he stepped out in front of the car and he hit him going from south to north. He said he stepped right out in front of him coming from the right to his left. Mr. Pair was not conscious when we arrived there. I looked at him to try to see if he was conscious and he would not answer me, and we just covered him up. . .

"The speed limit at that intersection on October 9, 1952, was thirty-five. There is not a street light at that intersection. There is a street light about one fifty to two hundred feet down the street at Hightower, but there is a lumber company on the north side of the street at the intersection, and they have these spot lights shining right on the building. The point was never brought out as to whether or not he had his lights on."

The defendant, Lee Roy Hines, testified on direct examination: "I was going to Atlanta . . . and just before I got to the intersection of Hightower and Gordon Road a man in a car in front of me made a left turn, and I went on and was in second gear. I was going twenty or twenty-five miles an hour, and all of a sudden this car was passing me and the man had passed in just a split second, and I had no way of avoiding hitting him, he was so close. I first saw this man right after this car passed. It was just a split second. I put on the brake and then I pulled over toward the curb and I got out, and I saw this man lying down down in the street, . . .

"I saw what happened. I would have avoided it if I possibly could. . . I was looking where I was going and I saw an approaching car. I was traveling about twenty or twenty-five

miles an hour in second gear. I wasn't in high gear because there was not too much distance between Hightower. I would say there is about two hundred feet between Hightower, I guess, I could not say. I knew the road was there (Willis Mill Road). There was not a cross-walk at Willis Mill Road and at that time there was not a light at Willis Mill Road. There is now. . . I recall one car coming toward me. It passed me just a split second before it happened. This other car was coming from town and I was going toward town. I lived out in that neighborhood. I was pretty familiar with this road. I have lived out there about twelve years. There is a lot of traffic at the intersection of Hightower and Gordon. . .

"No automobile was proceeding in an easterly direction in front of me. One was coming in a westerly direction. There was one that turned into Hightower at the time of the accident. I did not testify that this automobile turned left and I immediately saw the pedestrian. It was just a split second, just like he dropped out of the sky. The car in front of me turned into Hightower, and I was going into town, and I was in second gear, and the car come west toward me, and as it passed, a man appeared in front of the car in a split second. I did not testify that a second after this man turned into Hightower I saw this man like he dropped from the sky. . . I know the car was coming toward me and passed and he was going in a westerly direction, and it happened in a split second.

". . . This automobile coming in an opposite direction was right at me, just passed me; and he was in front of the automobile in a split second. You can tell it whether you look right at it or not. He was right in front of me. Oh, I know this car was close to the white center line, and he was like a split second in front of the car, and I could not say how far he was at that time. My automobile is about four or five feet wide; I could not say exactly. My two left wheels were not right on the center line, it was close to it, about two or three feet from the center line. Gordon Road at that point is about forty feet wide, I guess. . . I was proceeding straight forward during the time he was walking out in the street, but I did not see him while he was traveling this thirteen or fourteen feet or ten feet. All I could say, it was a split second when he was in front of the car, and

that is the first time I saw him. I did not see Mr. Pair until he was just in front of the car."

Preston Kemp, the plaintiff's brother-in-law, testified that he was driving his automobile behind that of the defendant Hines, and saw Hines' automobile strike Pair. He testified: "I was thirty-five or forty feet behind Mr. Hines' car. I had my car in second gear, and Lee Roy had to slow up because I had to, and I let him pass me and I followed in right behind him and he was about two feet from the white line and I was more over to the right of the road than he was, and I seen the man fall, and about that time Lee Roy hit him, . . . He (referring to the deceased) just had his hands down by his waist shuffling along, and he went to stumbling; and when Hines hit his brakes he hit him about the same time. He was going towards town. . . . I can pin point the accident. From Exhibit No. 3 this is Willis Mill Road right here. That was where he was crossing. He was crossing right here (indicating). When I first saw him, he was in this corner, but he was already out in the street, walking up the edge of the sidewalk. He was sort of angling out in the street, staggering. He was right in the middle of the intersection, kind of. When I first saw him, he was either stepping off the curb or walking by the side of the road on the curb. He was staggering along, and all of a sudden he cut to the left right out in front of this car. Then I seen the stop light get brighter and I knewed he was going to stop, and I thought he was going to miss him, but he hit him. I hit my brakes and just barely touched the bumper of his car, and I got out to the right right quick. After he hit the man he went about thirty or forty feet."

On cross-examination, Kemp testified: "Mr. Pair was about nine or ten foot out in the street when he was struck. I seen him when he left the sidewalk. I was farther over to the right than Mr. Hines was. He was in front of me. When Mr. Pair got out in the street, he cut across angling from the way he come. He was going up Gordon Road towards town. He was not walking across the walk; he was walking cater-cornered towards the building supply place. He just went in the general direction, he did not make a turn."

The jury were authorized to find that this latter witness was impeached by proof of prior contradictory statements about the

occurrence. For instance, as against the witness's statement that he saw the deceased shuffling along in the street before he was struck by Hines' automobile, Mrs. Pair testified that the witness told her while bringing her to the scene of the accident that he had not seen the deceased until his body was thrown into the air by Hines' automobile. Again the witness testified on the trial that Hines' car stopped in about 35 feet after striking Pair, but the plaintiff's attorney, Mr. Brooks, who took the stand, testified that the witness had stated to him that Hines' car traveled some 75 feet before coming to a stop. Brooks also testified that the witness told him that Hines had told the witness that he had his head bowed in prayer, and when he raised his head up he saw the pedestrian. The witness, of course, denied on the stand that the defendant ever told him this.

The evidence shows without dispute that Pair was walking into the street angling across, and had traveled some 12 or 14 feet from the curb before he was hit. During this time the defendant traveled more than a hundred feet. From these facts the jury would have been authorized to infer that, had the defendant been keeping a proper lookout ahead, he would have seen Mr. Pair when he was at least one hundred feet away and would have been able to avoid striking him, and for this reason the jury might have been authorized to believe the testimony that the defendant had his head down praying just before he struck the deceased. Further, while there was no direct evidence as to speed, the jury were authorized to find that the automobile was traveling at a high rate of speed, based on all the circumstances, particularly the smashed and dented condition of the front of the defendant's automobile, resulting from striking the deceased's body, pictures of which condition were in evidence, and to infer that this speed was negligent under all the facts and circumstances shown by the evidence.

While the jury were not authorized to infer negligence from the mere happening of the casualty alone, and the duty rested with the plaintiff of proving by a preponderance of the evidence her case as laid, the evidence outlined above was sufficient to authorize the jury to infer negligence on the part of the defendant in at least some of the ways alleged, and the trial court did not err in overruling the general grounds of the motion for new trial.

As has been so frequently said, questions of negligence, diligence, cause and proximate cause are generally questions for the jury; and where in a given case there is evidence to sustain the jury's finding, it should not be overturned by the courts in passing upon the general grounds of the motion.

2. The first special ground complains of the admission in evidence, over the defendant's objection, of a written statement signed by counsel for the plaintiff, purporting to show that the witness Preston Kemp had given a version of the occurrence different from the one given by him on the witness stand, and had refused to sign a written statement after giving it. It appears from this ground that the sole objection made to the admission in evidence of this paper was, "We object to it as a self-serving declaration." This objection was not a good or sufficient one to place the court on notice as to just what the defendant contended was wrong in admitting this paper in evidence; and, in the absence of a more specific objection pointing out wherein or how such evidence was a self-serving declaration and of whom it was self-serving, the trial court did not err in admitting the paper in evidence over the defendant's stated objection.

3. The second special ground numbered "V" complains of the following charge of the court: "Now, gentlemen, the plaintiff further contends in this case that the defendant violated section 88-1002 (a) of the ordinance of the City of Atlanta, as charged in her petition. The defendant denies this contention. I charge you that if you find that this collision occurred within the incorporated limits of the City of Atlanta, and if you find that there was in force and effect a valid City Ordinance as alleged in the plaintiff's petition and that the defendant violated said section of the City Code or Ordinance, then such violation would constitute negligence per se." It is contended that this charge was error because it authorized the jury to find that the deceased was in the cross-walk at the time he was struck, when there was no evidence that he was in the cross-walk and when the defendant's evidence affirmatively showed that he was not in the cross-walk. Admitting that the defendant's evidence affirmatively showed that the deceased was not in the cross-walk, nevertheless the jury were authorized to find from all the facts and circumstances proved and from the evidence quoted in the first division of this

opinion that the deceased was in the cross-walk. This portion of the charge was not, therefore, error for the reason assigned.

4. Counsel for the plaintiff in error do not argue or insist· upon the final special ground of the motion for new trial, and the same is therefore treated as abandoned and will not be considered by this court.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*